**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| COMBE INC., | ) |
|    Plaintiff, | ) |
| | ) |
|       v. | )    Case No. 1:17-cv-935 |
| | ) |
| DR. AUGUST WOLFF GMBH & CO. | ) |
| KG ARZNEIMITTEL, | ) |
|    Defendant. | |

**MEMORANDUM OPINION**

Defendant, a German manufacturer of medicinal, cosmetic and dermatological products, filed an application with the United States Patent & Trademark Office ("PTO") Trademark Trial and Appeal Board ("TTAB") to register the mark VAGISAN for use on pharmaceutical and sanitary preparations in the United States. Plaintiff, a domestic manufacturer of competing products sold under the registered mark VAGISIL, filed an opposition to defendant's application. The TTAB ultimately ruled in favor of defendant, finding there was no likelihood of confusion between plaintiff's VAGISIL mark and defendant's proposed VAGISAN mark. Plaintiff now appeals this TTAB decision pursuant to 15 U.S.C. § 1071(b)(1) and, as that statute permits, asserts additional federal and state claims against defendant for trademark infringement, trademark dilution, and unfair competition.

Defendant now seeks dismissal of these additional claims, arguing that the complaint has not alleged facts to establish the statutorily-required "use in commerce" of the allegedly infringing mark. At issue, therefore, on defendant's threshold dismissal motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., is whether plaintiff can sue defendant for trademark infringement,

1

dilution, or unfair competition where, as here, a defendant has not sold or transported a good with the allegedly infringing mark in Virginia, or anywhere in the United States.

**I.[1]**

Plaintiff, Combe Incorporated, is a Delaware corporation and a leading maker of personal-care products for men and women. In particular, since approximately 1973, plaintiff has offered and sold a wide variety of women's personal care products, including medicated creams, moisturizers, deodorant powders, wipes, gels, washes and other products, under the trademark VAGISIL. Defendant, Dr. August Wolff GmbH & Co. KG Arzneimmitel, is a German limited liability partnership that manufactures medicinal, cosmetic and dermatological products, including feminine products under the label VAGISAN. Defendant maintains its headquarters in Bielefeld, Germany and has no offices or employees in the United States. Defendant's products are authorized for sale primarily in Belgium, Bulgaria, Estonia, Finland, Germany, Iraq, Iran, Jordan, Croatia, Lithuania, Latvia, Austria, Poland, Portugal, Switzerland, Serbia/Montenegro, Slovenia, Czech Republic, Turkey, Hungary, and the United Kingdom. At this time, defendant has not yet sold any products in the United States but has taken the following steps toward entering the United States market:[2]

- since October 25, 2011, defendant has maintained a website at "www.vagisan.com" with links to third party pharmacies where consumers can purchase products bearing

---

[1] The facts pertinent to defendant's motion to dismiss are appropriately derived from the complaint, documents incorporated into the complaint by reference, and matters of public record of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record … .").

[2] Although the following facts, describing defendant's steps to enter the United States market, are not alleged in the complaint, it is appropriate to take judicial notice of these facts as they are in the public record as a part of the TTAB proceedings. *Papasan* , 478 U.S. at 268 n.1.

the VAGISAN mark. Defendant's products are also available for purchase via third party pharmacies on Amazon.com.

- on January 24, 2012, defendant filed United States Trademark Application Serial No. 79/111,922 ("the '922 Application") with the PTO to register the mark VAGISAN for "pharmaceutical preparations, namely, vaginal moisturizers, vaginal anti-fungal preparations, vaginal washes; sanitary preparations for medical use; diet pills, diet capsules, diet liquid medications" and "soaps, perfumery, essential oils, cosmetics, hair lotions." Compl. ¶ 26.

- on March 14, 2012, representatives from defendant met in Germany with representatives from a United States based drugstore, Lil Drugstore, about potential distribution of VAGISAN products.

- on January 2, 2013, defendant provided a United States based consultant with three Powerpoint slides with regulatory information on VAGISAN Moisturizing Cream and Moisturizing Cream Combi for a presentation at a J.P. Morgan Investors Conference scheduled to take place in the United States

- in June 2014, defendant filed an application with the United States Food & Drug Administration ("FDA") for approval of the VAGISAN Vaginal Moisturizing Cream and Wash products within the United States.

Shortly after defendant filed the '922 Application with the TTAB in 2012, plaintiff filed an opposition to the application, arguing that defendant's use of a VAGISAN mark in the United States would create a likelihood of confusion with plaintiff's existing registered VAGSIL mark. During the course of these TTAB proceedings, defendant testified under oath that it has not, and will not, sell products bearing the VAGISAN mark in the United States unless and until the trademark application dispute with plaintiff is resolved. *See* Thevessen TTAB Dep. 34:11-21. Following consideration of evidence submitted by the parties, the TTAB issued a final decision on June 19, 2017, dismissing plaintiff's opposition on the ground that the VAGISAN mark did not so resemble the VAGISIL mark as to be likely to cause "confusion," "mistake," or "deception" pursuant to 15 U.S.C. § 1052. *See Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel,* Opposition No. 91209708 (TTAB June 19, 2017).

3

Thereafter, plaintiff filed this action on August 21, 2017 pursuant to 15 U.S.C. § 1071(b)(4), which allows a party otherwise entitled to appeal a TTAB decision to institute a suit against the party in interest in the Eastern District of Virginia.[3] In addition to its appeal of the final TTAB decision on registration of the VAGISAN mark, plaintiff brings the following federal and state claims against defendant:

(i) a claim for trademark infringement under the Lanham Act (Count II);

(ii) a claim for trademark infringement, false designation of origin, passing off, and unfair competition under the Lanham Act (Count III);

(iii) a claim for trademark dilution under the Lanham Act (Count IV);

(iv) a claim for trademark infringement under the Virginia Trademark and Service Mark Act ("VTSMA") (Count V); and

(v) a claim for trademark infringement and unfair competition under Virginia common law (Count VI).

On November 6, 2017, defendant filed a motion to dismiss each of these claims for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed. R. Civ. P.[4] An Order issued denying the Motion to Dismiss and holding that personal jurisdiction exists with respect to all plaintiff's claims. *See Combe Inc. v. Dr. August Wolffe GMBH*, No. 1:17-cv-935 (Dec. 1, 2017) (Order). Specifically, because personal jurisdiction plainly exists with respect to plaintiff's TTAB appeal and because the TTAB appeal and plaintiff's trademark infringement, dilution and unfair competition claims arise out of a common nucleus of operative fact, the doctrine of pendent personal jurisdiction operates to provide personal jurisdiction with respect to these claims as well. *Id.* at 4-8 (citing *ESAB Grp. V. Centricut Inc.*, 126 F.3d 617, 628 (4th Cir. 1997)

---

[3] 15 U.S.C. § 1071(b)(1)-(4) provides that a party dissatisfied with a decision of the TTAB "may . . . have a remedy by a civil action" and "such a suit may be instituted against the party interest as shown by the records of the [PTO] at the time of the decision complained of … ."

[4] Defendant did not at the time, and does not now, seek dismissal of the TTAB appeal.

(recognizing that under the doctrine of pendent personal jurisdiction, courts have authority over defendants to decide both federal and state claims where the claims arise from a common nucleus of operative fact)).

On January 2, 2018, defendant filed the Motion to Dismiss at issue here pursuant to Rule 12(b)(6), Fed. R. Civ. P., contending that plaintiff has failed to allege facts showing that defendant used the VAGISAN mark in United States commerce, and as such, plaintiff cannot state a claim for trademark infringement, dilution, or unfair competition under either the Lanham Act or Virginia law. Plaintiff opposes the motion, contending that the steps defendant has taken to enter the United States market, including seeking FDA registration, meeting with United States consultants, and developing a plan to enter the market, are sufficient to state claims for trademark infringement, dilution, and unfair competition. These issues have been fully briefed and argued and are now ripe for disposition.

## II.

The standard on a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., is too well-settled to dispute or to require extensive discussion. Put simply, a court may dismiss a claim if, after accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

Defendant argues that plaintiff's federal and state trademark infringement, dilution, and unfair competition claims fail because the complaint does not allege, nor does the record

disclose, facts to establish the requisite use in commerce of the allegedly infringing mark. This argument succeeds, but requires some elaboration.

The Lanham Act[5] imposes liability for infringement of a registered mark, for unfair competition, and for trademark dilution. *See* 15 U.S.C. § 1114(a) (trademark infringement), *id.* § 1125(a) (unfair competition); *id.* § 1125(c)(1) (trademark dilution). To state a claim under each of these Lanham Act provisions, plaintiff must allege and establish, *inter alia*, facts showing defendant's "use in [United States] commerce" of the mark.[6] With respect to plaintiff's Virginia law claims, it is important to note that VTSMA uses essentially identical language to that of the Lanham Act, imposing liability for trademark infringement for an allegedly infringing mark's use in commerce in the Commonwealth of Virginia. *See* Va. Code §§ 59.1-92.2, -92.12. And the Fourth Circuit has made clear that "Virginia common law trademark infringement and unfair competition claims require the same proof, . . . as the Lanham Act offense." *Swatch AG v. Beehive, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (citing *Lone Star Steakhouse & Saloon*, 43 F.3d 922, 930 n.10 (4th Cir. 1995)). Thus, if a plaintiff has not satisfied the use in commerce requirement for the Lanham Act, it follows *a fortiori* that the plaintiff has not satisfied the

---

[5] 15 U.S.C. § 1051 *et seq.*

[6] Specifically, section 32 of the Lanham Act imposes trademark infringement liability on "any person who shall, without the consent of the registrant, . . . use in commerce any . . . colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive … ." 15 U.S.C. § 1114(a)(1). With respect to unfair competition, section 43(a) of the Lanham Act imposes liability for unfair competition on "[a]ny person who, on or in connection with any goods or services, … uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion[.]" 15 U.S.C. § 1125(a). And finally, section 43(c) of the Lanham Act allows courts to enjoin "use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1). In this regard, the Fourth Circuit has held that

> A plaintiff alleging causes of action for trademark infringement and unfair competition must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).

6

requirements for infringement or unfair competition under either Virginia common law or the VTSMA.

A threshold question is the meaning of "use in commerce" under the Lanham Act for the purposes of plaintiff's trademark infringement, dilution, and unfair competition claims. Analysis of this question properly begins with the text of the Lanham Act. Notably, the Lanham Act defines "use in commerce" as

> the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—
>
> (1) on goods when—
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce … .

15 U.S.C. § 1127. And the Act defines commerce as "all commerce which may lawfully be regulated by Congress." *Id*. In other words, the plain text of the statute makes clear that to use a mark in commerce on goods, (i) the defendant must affix the mark to the good or its container and (ii) the defendant must sell or transport a good in commerce such that it can be regulated by Congress. Given this definition, it follows that neither the Lanham Act's use in commerce requirement, nor Virginia law's similar requirement, is satisfied where, as here, the complaint does not allege, nor does the record reflect, any facts suggesting that defendant has sold or transported VAGISAN marked products in United States commerce.[7]

---

[7] As described *supra*, the Fourth Circuit has concluded that Virginia common law trademark infringement and unfair competition claims are subject to the same analysis as federal claims under sections 32 and 43(a) of the Lanham Act. *See Swatch AG*, 739 F.3d at 162. And importantly, the VTMSA adopts almost precisely the same statutory definition as the Lanham Act, with the additional requirement that the good is used in commerce in the Commonwealth of Virginia. Specifically, the VTSMA defines use of a mark as

To avoid this conclusion, plaintiff argues that this statutory definition does not apply in the infringement, unfair competition, and dilution contexts, and instead simply sets the standards and circumstances under which the owner of a mark can qualify to register the mark. In this respect, plaintiff correctly notes that the statute provides that its definitions are not applicable where "the contrary is plainly apparent from the context." 15 U.S.C. § 1127. Plaintiff contends that in the context of infringement, dilution and unfair competition, the statutory definition cannot apply because it would then lead to absurd results. Specifically, the statutory definition recited above requires "bona fide use of a mark" to constitute "use in commerce." *Id.* This definition, if applied strictly in the infringement, dilution, and unfair competition contexts, would allow infringers to escape liability *precisely because* they used a mark in bad faith. Plainly, Congress did not intend to provide a cause of action against only those infringers who acted with good intentions while allowing nefarious actors to evade liability. Accordingly, plaintiff argues that the entire statutory definition of "use in commerce" cannot apply in the infringement, dilution and unfair competition contexts.

Plaintiff's argument, although superficially plausible, ultimately fails; the argument goes off the tracks because it incorrectly assumes that if the first sentence of the definition does not apply in this context, the entire definition is inapplicable. But this conclusion is unpersuasive; it does not follow that if the first sentence of the provision does not apply in this context, then the entire definition is inapplicable. And indeed, courts adjudicating trademark infringement actions

---

        the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For the purposes of this chapter, a mark shall be deemed to be in use (i) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and the goods are possessed in the Commonwealth or sold or otherwise distributed in commerce in the Commonwealth ... .

Va. Code § 59.1-92.22. Accordingly, if there has been no "use in commerce" sufficient to satisfy the requirements of the Lanham Act, it follows *a fortiori* that there cannot be use in commerce for the purposes of plaintiff's Virginia law claims.

have persuasively reached this conclusion, namely that the second sentence of the "use in commerce" definition is nonetheless applicable in infringement cases.[8] Indeed, *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009), a case relied on by plaintiff, does precisely this; there the Second Circuit assumed without deciding that "the requirements of the second sentence of the definition of 'use in commerce' in § 1127 apply to infringing conduct." *Id.* at 140 (Appendix). More specifically, the Second Circuit in *Rescuecom* concluded that the preferable solution given that circuit's precedent was to accord a different scope of application to the two sentences of § 1127's "use in commerce" definition, applying the first sentence exclusively to the registration context and applying the second sentence to the infringing context, as well. *Id.* at 140-41.

Attempting to avoid this conclusion, plaintiff points to a sentence from a Senate report, stating that "use of any type will continue to be considered in an infringement action." S. Rep. No. 100-515, at 44–45 (1988). But reliance on this sentence in the Senate report is hardly persuasive because as Justice Scalia sensibly teaches us, "[t]he Constitution gives legal effect to the 'Laws' Congress enacts [] not the objectives its Members aimed to achieve in voting for

---

[8] *See, e.g.*, *1–800 Contacts Inc. v. Whenu.com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005) (applying the second sentence of § 1127's "use in commerce" definition in the infringement context); *Southco, Inc. v. Fivetech Inc.*, 982 F. Supp. 2d 507, 511 (E.D. Pa. 2013) (applying the second sentence of the § 1127 definition of "use in commerce" and finding no "use in commerce" where defendant had website, product catalogue, and price quotes but had not sold or transported the good in United States commerce); *Guantanamera Cigar Co. v. Corporacion Habanos*, S.A., 672 F. Supp. 2d 106, 112-13 (D.D.C. 2009) (applying the second sentence § 1127 definition and finding no use in United States commerce where defendant did not sell products in the United States but its product appeared in foreign advertisements and on websites); *Bertolli USA Inc. v. Filippo Bertolli Fine Foods, Ltd.,* 662 F. Supp. 203, 205 (S.D.N.Y. 1987) (applying the second sentence of § 1127's "use in commerce" definition and denying motion to dismiss where defendant brought nine bottles of his product to the United States and shipped one bottle to a distributor in San Francisco); *see also Sensient Techs. Corp. v. SensoryEffects Flavor Co*., 613 F.3d 754, 761 n. 2 (8th Cir. 2010) (assuming "without holding" that the second sentence of § 1127's "use in commerce" definition applies in infringement context to affirm summary judgment for defendant). *But see N. Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 n.7 (11th Cir. 2008) (recognizing that a "leading treatise on trademarks notes that § 1127 'defines the kind of use needed to acquire registrable trademarks rights—not to infringe them'"); *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (holding district court's application of § 1127's "use in commerce" definition in the infringement context was incorrect because "use in commerce" is "simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause" and § 1127 is prefaced by language that "unless the contrary is plainly apparent from the context").

9

them[.]" *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 302 (2010) (Scalia, J., concurring). Significantly, legislative history of a statute is entitled to even less weight where, as here, it is conflicting. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 49 (1950) (refusing to countenance legislative history where it "is more conflicting than the text is ambiguous"), *superseded by statute on other grounds as noted in Ardestani v. INS*, 502 U.S. 129 (1991). Notably, the Lanham Act's confusing legislative history has caused commentators to reach different conclusions concerning the application of the "use in commerce" definition in § 1127. *Compare* 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed. 2017) ("The Lanham Act § 45 narrowing definition of what constitutes 'use in commerce' is just a relaxed remnant of trademark law's once-hyper-technical 'affixation' requirement. This statutory anachronism certainly was never intended to limit the scope of 'uses' that would constitute infringement.") *with* Margreth Barrett, *Trademarks and Digital Technologies: "Use" on the Net*, 13 No. 11 J. Internet L. 1, 9 (2010) ("[T]he Lanham Act's legislative history makes it clear that Congress intended this statutory definition [of section 45] to apply in the infringement context and to carry forward the 1905/1920 Acts' general 'affixation or other close association' requirement."). In short, the Lanham Act's conflicting legislative history cannot be relied upon to upset the plain language of the second sentence of 15 U.S.C. § 1127. Instead, the plain language of § 1127 compels the conclusion that, for the purposes of a trademark infringement, dilution, and unfair competition action, "use in commerce" of a mark on a good requires that the good be "sold or transported in commerce" that can be regulated by Congress. 15 U.S.C. § 1127.

Given that 15 U.S.C. § 1127 defines "use in commerce" for trademark infringement, dilution, and unfair competition purposes, it is clear that defendant's activities here cannot satisfy

this "use in commerce" requirement. Importantly, § 1127 requires that goods upon which a mark is used be "sold or transported" in commerce subject to regulation by Congress. Neither the complaint nor the record in this case contains any evidence that defendant actually sold or transported any goods in the United States or to a United States citizen. Put simply, there are no allegations in the complaint that any United States citizen has purchased a product with the mark VAGISAN or that a product bearing the VAGISAN mark has been transported to any state in the United States. Although defendant has sold its VAGISAN products in other countries, these sales are not sufficient to establish use in commerce because the Act defines commerce as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The Constitution does not empower Congress to regulate commerce that occurs exclusively within foreign nations, between foreign citizens, and with no effect on American commerce. *See* U.S. Const. art. I sec. 8 (empowering Congress "[t]o regulate commerce with foreign nations, and among the several states, and with Indian tribes").[9] And importantly, because the complaint contains no allegations regarding the transportation or sale of a product bearing the VAGISAN mark anywhere in the United States, it follows *a fortiori* that plaintiff cannot satisfy the use in commerce requirements of the VTSMA or of Virginia common law. *See supra* note 7.

Plaintiff makes a further attempt to escape the use in commerce requirement by relying on cases that have concluded that certain preparatory steps to enter a market are sufficient to state trademark infringement, unfair competition and trademark dilution claims. Here, too, plaintiff is mistaken; defendant's preparatory steps to enter the United States market are not sufficient and the cases plaintiff cites are distinguishable. Courts have noted that where, as here, a defendant simply expresses an intent to use a particular mark by filing an application with the

---

[9] *Compare Steele v. Bulova*, 344 U.S. 280, 286 (1952) (affirming Court of Appeals's reversal of trial court's dismissal of trademark infringement action because the "operations and their effects were not confined within the territorial limits of a foreign nation").

PTO or by presenting an idea at a conference, these activities, without more, are not sufficient to constitute use in commerce.[10] Instead, to satisfy the use in commerce requirement, the defendant's acts must demonstrate that introduction of the product into the United States market is "imminent and impending." *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1335 (E.D. Mo. 1996).[11] Where introduction of the product is imminent and impending, "equity and common sense dictate issuance of an injunction at an early stage" to prevent defendants from "needlessly devot[ing] time, energy and financial resources to a futile endeavor." *Bertolli USA, Inc.*, 662 F. Supp. at 205-06.[12]

The complaint here does not allege, nor does the record reflect, that defendant is ***imminently*** preparing to market its products in the United States. Instead, what the record discloses is that defendant, at one time, took preparatory steps to enter the United States market, but has now put its preparations on hold pending the resolution of the TTAB appeal. Specifically, plaintiff held one unsuccessful meeting in Germany with a United States distributor

---

[10] *See, e.g.*, *Marshall Tucker Band, Inc. v. M T Indus., Inc.*, 238 F. Supp. 3d 759, 764-65 (D.S.C. 2017) ("Registration of a trademark, standing alone, is insufficient to constitute a use in commerce required to state a claim under the Lanham Act"); *United Am. Indus., Inc. v. Cumberland Packing Corp.*, 2007 WL 38279, at *3 (D. Ariz. Jan. 5, 2007) ("[C]ourts have required more than an intent or threat to infringe in order to demonstrate 'use in commerce' under the Lanham Act … . Without more, these expressions of intention [by defendant] are insufficient to constitute 'use in commerce' as required by the Lanham Act."); *Macia v. Microsoft Corp.*, 152 F. Supp. 2d 535, 539 (D. Vt. 2001) (finding intent to use application was not sufficient to satisfy use in commerce requirement); *Cognitest Corp v. Riverside Pub. Co.*, 1995 WL 382984, at *2 (N.D. Ill. June 22, 1995) (finding the complaint failed to allege "use in commerce" where the complaint alleged only that defendant planned to present a product at a meeting in the United States); *cf. Lang v. Pacific Marine and Supply Co.*, 895 F.2d 761, 765-66 (Fed. Cir. 1990) (holding ship could not be used in commerce where the ship was still under construction).

[11] *See also Essie Cosmetics, Ltd. v. Dae Do Int'l Ltd.*, 808 F. Supp. 952, 957 (E.D.N.Y. 1992) ("In a trademark infringement action, a court may grant injunctive relief 'even before defendant actually opens the business,' so long as the threatened act of defendant is 'imminent and impending.'") (quoting J. Thomas McCarthy, Trademarks & Unfair Competition, § 30.5 at 470 (2d ed. 1984)); *Simone v. VSL Pharms., Inc.*, 133 F. Supp. 3d 776, 797 (D. Md. 2015) (denying motion to dismiss where defendant planned to bring product to market in just over a month using packaging that allegedly infringed plaintiff's mark).

[12] Plaintiff cites to *Capital One Financial Corp. v. Drive Financial Services, LP*, 434 F. Supp.2d 367, 374 (E.D. Va. 2006) for the proposition that a defendant's acts need not be imminent and impending, but rather the defendant need only have a "definite intent and apparent ability to commence use[,]" to satisfy the use in commerce requirement. But this standard is not applicable here because the *Capital One* case involved a Rule 12(b)(1), Fed. R. Civ. P. challenge to subject matter jurisdiction. And importantly, the opinion there expressly stated that it "render[ed] no opinion concerning infringement." *Id.* at 374.

six years ago. Plaintiff's communications with a United States based consultant also occurred more than five years ago and involved a presentation on regulatory information related to defendant's FDA application. And most importantly, Angela Thevessen, Expert Manager of defendant, testified under oath that defendant has put its plans to market VAGISAN products in the United States on hold because it will not know if it can legally use the VAGISAN mark in the United States until the conclusion of this litigation. *See* Thevessen TTAB Dep. 34:11-21.

These facts stand in stark contrast to the facts of the cases on which plaintiff relies; the defendants in those cases were (i) widely disseminating information regarding their upcoming services,[13] (ii) developing mailing lists of potential customers,[14] (iii) actively seeking licensees for their product,[15] (iv) displaying allegedly infringing packaging at national trade shows,[16] and (v) planning to bring their product to the market in a little over one month.[17] Defendant in this case has done none of these. In sum, because defendant's introduction of the product is not imminent and impending, the complaint has failed to allege facts sufficient to show that defendant has used the mark in United States commerce.

Plaintiff next contends that defendant's website is sufficient to constitute use in commerce for purposes of plaintiff's trademark infringement, dilution, and unfair competition claims. Although the use of a website may be sufficient to establish use in commerce in some instances, the cases plaintiff cites do not squarely address this issue. In *People for Ethical Treatment of Animals v. Doughney*, cited by plaintiff, the Fourth Circuit did not address the Lanham Act's "use in commerce" requirement because the parties did not dispute that element of

---

[13] *Maritz, Inc.*, 947 F. Supp. at 1328.

[14] *Id.*

[15] *AARP v. 200 Kelsey Assocs., LLC*, 2009 WL 47499, at *1, *11 (S.D.N.Y. Jan. 8, 2009).

[16] *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004).

[17] *Simone*, 133 F. Supp. 3d at 797.

plaintiff's claim. 263 F.3d at 365. Instead, the Fourth Circuit in that case focused on whether the defendant there used the website "in connection with goods or services" and in a manner engendering a likelihood of confusion. *Id.* Similarly, in *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005), the Fourth Circuit did not resolve any issues related to the "use in commerce" requirement, but instead reversed the district court's injunction because the record there presented no likelihood of confusion. *Id.* at 314.

In the end, it is unnecessary to resolve the question whether defendant's website alone is sufficient to constitute "use in commerce" because even if it were sufficient, an injunction with respect to the website would be inappropriate. The record reflects that defendant has no offices in the United States and no United States employees. Accordingly, an injunction regarding defendant's advertising efforts on its website would necessarily have to have an extraterritorial effect because it would restrain defendant's activities in Germany. This is important as Fourth Circuit precedent makes clear that courts may only issue such injunctions to prevent violations under the Lanham Act "where the extraterritorial conduct would, if not enjoined, have a significant effect on United States commerce… ." *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 250 (4th Cir. 1994). Here, as previously noted, there are no allegations in the complaint or facts in the record showing that defendant's website, or indeed any of its conduct, would have a significant effect on United States commerce if not enjoined. Defendant has not authorized the sale of its products to citizens in the United States nor has it directly sold any products in the United States. And despite the fact that defendant's website, which contains links to third party pharmacies, has been available in the United States since 2011, there are no allegations and no record evidence establishing that these third-party pharmacies have sold a single product bearing the VAGISAN mark in the United States.

## IV.

In sum, for a plaintiff to state a claim of trademark infringement, dilution, or unfair competition, federal law—the Lanham Act—and Virginia law—the VTMSA—require that the defendant's goods be sold or transported in United States and Virginia commerce, respectively. Because there are no allegations in the complaint and no record evidence suggesting that defendant has sold or transported a product bearing the VAGISAN mark in the United States or to a United States citizen, let alone in Virginia or to a Virginia citizen, plaintiff cannot satisfy the use in commerce requirement of the Lanham Act or Virginia law. This is so even though defendant has taken preparatory steps to enter the United States market because those preparations are not imminent and have been placed on hold pending resolution of the TTAB appeal. And this is so even though defendant operates a website because an injunction concerning defendant's extraterritorially-operated website would be inappropriate where the website has had no effect on United States commerce. Accordingly, Counts II-VI of plaintiff's complaint must be dismissed without prejudice. It is important to note, however, that this decision will not preclude plaintiff from filing a subsequent action should changed circumstances warrant. At this time, however, it is simply premature to adjudicate the infringement, dilution, and unfair competition claims on the basis of these allegations and the current record.

An appropriate Order will issue.

Alexandria, Virginia
March 28, 2018

T. S. Ellis, III
United States District Judge