**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| Combe Incorporated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                    v. ) | No. 1:17-cv-935 (TSE/MSN) |
| ) | |
| Dr. August Wolff GmbH & Co. ) | |
| KG Arzneimittel, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE
AND/OR EXCLUDE PLAINTIFF'S EXPERT HAL PORET</u>**

# TABLE OF CONTENTS

**Page**

I. RELEVANT FACTUAL BACKGROUND ....................................................1

    A. The TTAB's Ruling in Favor of Wolff, Finding No Likelihood of Confusion Between VAGISIL and VAGISAN Trademarks................................1

    B. Poret's Confusion and Fame Surveys.......................................................3

        i. Poret's Flawed Confusion Survey ...............................................3

        ii. Poret's Flawed Fame Survey......................................................5

    C. Dr. Simonson's Opinions on Defects in the Poret Surveys...................................6

        i. Dr. Simonson's Expertise ...........................................6

        ii. Flaws in Poret's Confusion Survey .....................................6

        iii. Flaws in Poret's Fame Survey ...................................7

    D. Additional Defects in Poret Confusion Survey ...................................7

II. LEGAL STANDARD ...........................................................7

III. ARGUMENT ...................................................9

    A. The Poret Confusion Survey Should be Excluded. ...............................9

        i. Poret's Survey Methodology is Flawed Because it Fails to Replicate Market Conditions.................................9

        ii. The Survey is Invalid Because it Used an Improper Control...................12

        iii. Poret's Confusion Survey Should be Excluded Because it Improperly Counted Individuals Who Were Not Confused by the VAGISAN Mark, and Failed to Account for the Genericness of the Term VAGI. ...................................15

        iv. If the Poret Confusion Survey is Not Excluded, it Should Be Given No Weight. ...................................20

    B. The Poret Fame Survey Should Be Excluded ...................................21

        i. The Survey is Invalid Because it is Based on a Flawed Methodology...................................21

IV. CONCLUSION ...................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashland Oil, Inc. v. Olymco, Inc.*,
    1995 WL 499466 (6th Cir., Aug.21, 1995) ............................................................20

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
    No. 10 CV 2333 (KMW), 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013) ................................20

*CareFirst of Maryland, Inc. v. First Care, P.C.*,
    434 F.3d 263 (4th Cir. 2006) ......................................................................10

*Citigroup Inc. v. Capital City Bank Grp., Inc.*,
    637 F.3d 1344 (Fed. Cir. 2011) ....................................................................11

*Citizens Banking Corp. v. Citizens Fin. Grp., Inc.*,
    320 F. App'x 341 (6th Cir. 2009) ..................................................................15

*Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel*, Opposition No.
    91209708 (T.T.A.B. June 19, 2017) ............................................................2, 22

*Componentone, L.L.C. v. Componentart, Inc.*,
    No. 02:05cv1122, 2008 WL 4790661 (W.D. Pa. Oct. 27, 2008) ..............................11

*Daubert v. Merrell Dow Pharms. Inc*,
    509 U.S. 579 (1993) .............................................................................8, 9

*Ducks Unlimited, Inc. v. Boondux, LLC*,
    No. 2:14-02885-SHM, 2017 WL 3579215 (W.D. Tenn. Aug. 18, 2017) ..................13, 16, 19

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
    No. 08-CV-10983, 2011 WL 6010206 (E.D. Mich. Nov. 30, 2011) ........................15, 21

*Joules Ltd. v. Macy's Merch. Grp. Inc*,
    No. 15-CV-3645 KMW, 2016 WL 4094913 (S.D.N.Y. Aug. 2, 2016), *aff'd*,
    695 F. App'x 633 (2d Cir. 2017) ..................................................................13

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
    No. 04 Civ.7203(DLC), 2006 WL 1012939 (S.D.N.Y. Apr. 19, 2006) ..........................11

*Kroger Co. v. Lidl US, LLC*,
    No. 3:17-480-JAG, 2017 WL 3262253 (E.D. Va. July 31, 2017) ..............................12

*Miles Labs., Inc. v. Naturally Vitamin Supplements, Inc.*,
    1 U.S.P.Q.2d 1445 (T.T.A.B. 1986) ...............................................................10

*Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*,
   198 F. Supp. 2d 474 (S.D.N.Y. 2002) ...................................................................................... 12

*Phillips Petroleum Co. v. C.J. Webb, Inc.*,
   442 F.2d 1376 (C.C.P.A. 1971) ............................................................................................... 11

*Pilot Corp. of Am. v. Fisher–Price, Inc.*,
   344 F. Supp. 2d 349 (D. Conn. 2004) ...................................................................................... 12

*Playtex Prods., Inc. v. Georgia–Pacific Corp.*,
   390 F.3d 158 (2d Cir. 2004) .................................................................................................... 11

*Playtex Prods., LLC v. Munchkin, Inc.*,
   No. 14-1308 (RJS), 2016 WL 1276450 (S.D.N.Y. Mar. 29, 2016) ........................................... 9

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
   265 F. Supp. 3d 1013 (N.D. Cal. Sept. 19, 2017), *appeal filed*, No. 17-16916
   (9th Cir. Sept. 22, 2017) ......................................................................................................... 14

*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ........................................................................... 13, 14, 21

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.*,
   800 F. Supp. 2d 515 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) ....................... 13

*Valador, Inc. v. HTC Corp.*,
   242 F. Supp. 3d 448 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) ..................... 8, 9, 12

*Visa Int'l Serv. Ass'n v. E. Fin. Fed. Credit Union*,
   24 U.S.P.Q.2d 1365 (9th Cir. 1992) ........................................................................................ 11

*Water Pik, Inc. v. Med-Sys., Inc.*,
   726 F.3d 1136 (10th Cir. 2013) ............................................................................................... 10

*Water Pik, Inc. v. Med-Sys., Inc.*,
   No. 10-01221-PAB-CBS, 2012 WL 2153162 (D. Colo. June 13, 2012), *aff'd*,
   726 F.3d 1136 (10th Cir. 2013) ............................................................................................... 20

*Worsham Sprinkler Co. v. Wes Worsham Fire Prot., LLC*,
   419 F. Supp. 2d 861 (E.D. Va. 2006) ...................................................................................... 10

**Statutes and Rules**

15 U.S.C. § 1141f ............................................................................................................................. 1

15 U.S.C. § 1052(d) ......................................................................................................................... 3

15 U.S.C. §§ 1071(b) ....................................................................................................................... 3

Fed. R. Evid. 702 ................................................................................................................... 1, 8

Defendant, Dr. August Wolff GmbH & Co. KG Arzneimittel ("Wolff"), by its attorneys, hereby moves for an order excluding and/or striking the reports, opinions, and testimony of Hal Poret, an expert proffered by Plaintiff, Combe Incorporated ("Combe").  As explained more fully herein, Mr. Poret's reports, opinions, and testimony should be stricken because they do not satisfy the standard for reliability under Federal Rule of Evidence 702.  Critically, Mr. Poret's Likelihood of Confusion Survey is unreliable because Mr. Poret failed to replicate marketplace conditions, incorrectly tabulated responses to favor Combe, failed to account for the highly descriptive nature of the prefix "vagi" (which is a shorthand reference to the generic name "vaginal care products") and he used an improper control that improperly favored Combe, the company that hired him.  Mr. Poret's Fame Survey is likewise unreliable due to Mr. Poret's use of an improper control to account for noise and to measure unaided awareness of the VAGISIL mark.  Mr. Poret's surveys are therefore unreliable and should be stricken or given minimal if any evidentiary weight.

## I.   RELEVANT FACTUAL BACKGROUND

### A.   The TTAB's Ruling in Favor of Wolff, Finding No Likelihood of Confusion Between VAGISIL and VAGISAN Trademarks

On January 24, 2012, Wolff filed United States Trademark Application Serial No. 79/111,922 to register the mark VAGISAN for "[p]harmaceutical preparations, namely, vaginal moisturizers, vaginal anti-fungal preparations, vaginal washes; sanitary preparations for medical use; diet pills, diet capsules, [and] diet liquid medications" in Class 5 and "soaps, perfumery, essential oils, cosmetics, [and] hair lotions" in Class 3.  This application was based on 15 U.S.C. § 1141f, which permits a foreign applicant to register its trademark based on a registration in its country of origin.

On March 7, 2013, Combe filed with the United States Trademark Trial and Appeal

Board ("TTAB") a Notice of Opposition against Wolff's application based on alleged likelihood of confusion (Section 2(d) of the Lanham Act) and lack of *bona fide* intent to use the mark in U.S. commerce.  Combe alleged prior rights in the mark VAGISIL, and claimed that Wolff's mark VAGISAN was so similar that it would create a likelihood of consumer confusion.

On June 19, 2017, the TTAB dismissed Combe's opposition and ruled in Wolff's favor, finding that "because of the inherent weakness of the VAGI-prefix, the considerable degree of purchaser care, and dissimilarity of the marks VAGISAN and VAGISIL, … Applicant's mark VAGISAN is not likely to cause confusion with Opposer's mark VAGISIL." *Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel*, Opposition No. 91209708, slip op. at 30 (T.T.A.B. June 19, 2017).  In reaching its decision, the TTAB emphasized marketplace evidence showing widespread of use of VAGI-prefix trademarks by third parties in connection vaginal care products.  *Id.* at 21 ("the number of third-party users is sufficient … to support our finding that the VAGI-prefix is used to create a trademark that suggests an intimate feminine product.").  Because of these third-party VAGI- marks, U.S. consumers are conditioned to distinguishing between numerous "VAGI-" marks for vaginal care products by looking to other components of the marks besides the generic prefix "VAGI."  Accordingly, the TTAB held that "the strongly suggestive nature of the VAGI-prefix (i.e., referring to intimate feminine products) means that Opposer's mark VAGISIL cannot bar the registration of every mark beginning with a VAGI-prefix used in connection with intimate health feminine hygiene products …" *Id.*  The TTAB thus correctly concluded that Wolff's VAGISAN mark (like the many other third-party VAGI-marks registered and used in the United States) could co-exist with Combe's VAGISIL mark without causing confusion.  *Id.* at 30.

Despite the TTAB's well-reasoned decision, on August 21, 2017, Combe filed its

Complaint pursuant to 15 U.S.C. § § 1071(b) and 1052(d) in this Court appealing the TTAB's

decision (Count I of the Complaint) and asserting additional claims for trademark infringement,

dilution, and unfair competition under federal, state, and common law (Counts II through VI).

The Court correctly dismissed all of the additional claims for failure to state a claim.  ECF 33.

### B.  Poret's Confusion and Fame Surveys

### i.  Poret's Flawed Confusion Survey

Combe retained former attorney Hal Poret to conduct two surveys in this case: one

concerning the alleged likelihood of confusion between the marks VAGISIL and VAGISAN,

and the other concerning the alleged fame of the VAGISIL mark.  Both surveys are fatally

flawed and should be excluded.  Mr. Poret's educational background is in the field of law and he

now devotes most of his time to providing surveys and opinions in connection with trademark

disputes.

Mr. Poret's Confusion Survey, attached hereto as Exhibit 1[1], summarizes the results of an

online *Eveready* type survey polling 400 respondents, namely, U.S. female only consumers age

18 and older who purchased vaginal moisturizers, vaginal washes, or vaginal anti-fungal

products in the past 12 months, or who were likely to do so in the next 12 months.  Ex. 1 at 15.

The respondents were divided into two groups – a Test Group comprised of 200

respondents and a Control Group comprised of 200 respondents.  *Id*. at 7.  Rather than showing

respondents the VAGISAN mark as it is actually used on Wolff's packaging on Amazon.com

and in other countries, Mr. Poret improperly showed the Test Group only the word mark

VAGISAN in Times New Roman font with the words "vaginal moisturizers, vaginal washes, and

vaginal anti-fungal products" below the word VAGISAN.  *Id*.  As detailed *infra*, Mr. Poret's use

---

[1] The exhibits referenced herein are attached to the Declaration of Ross Q. Panko, being filed
concurrently herewith.

of "VAGISAN" in Times New Roman font renders his survey unreliable because it fails to test how consumers will actually encounter the VAGISAN mark in the marketplace.

All respondents were then asked the following three questions in an attempt to induce them to mention the term Vagisil: "What company or brand do you think puts out the products we just told you about, if you have an opinion?" *Id.* at 8; "Do you think the company that makes the products we just told you about also makes any other products that you know of?" *Id.* at 9; and "Do you think the products that we told you about are affiliated with, or sponsored or approved by, any other company or brand?" *Id.* at 10. Depending on the answers to these questions, subsequent questions were also asked to probe the reasoning behind the respondents' answers.

The Control Group was asked the identical survey questions about a fictional "control" trademark: "VAGIPUR." As detailed *infra*, Mr. Poret's selection of "VAGIPUR" as a control was improper and renders his survey unreliable because (1) the mark "VAGIPUR" is not sufficiently similar to "VAGISAN" to accurately capture survey "noise"; and (2) the selection of "VAGIPUR" is implausible as "PUR" is a common suffix used for geographical locations and suggests a foreign city or other meaning, and "SAN" does not have a similar meaning as "PUR" as improperly assumed by Mr. Poret.

According to Mr. Poret, the results from the Test Group showed a gross confusion rate of (37%), i.e., 74 of 200 respondents (37%), who were asked about the VAGISAN mark identified VAGISIL in response to one or more of the confusion questions. And Mr. Poret alleged that the results from the Control Group showed a confusion rate of (18%), i.e., 36 of 200 respondents (18%), who were asked about the VAGIPUR control term identified VAGISIL in response to one or more of the confusion questions. Accordingly, Mr. Poret's Confusion Survey yielded a

4

net confusion rate of 19%.  *Id*. at 14.  In fact, as shown below, Mr. Poret improperly tabulated the responses in a manner that skews the results in favor of his client Combe.

## ii.  **Poret's Flawed Fame Survey**

Mr. Poret's Fame Survey, attached hereto as Exhibit 2, is similarly flawed because it used an improper and bizarre control -- "VAGIZOX" – which renders the survey unreliable.  Mr. Poret used a different universe for the fame survey and polled 300 respondents (both men and women), age 18 and older, to measure aided and unaided awareness of the VAGISIL mark.  Ex. 2 at 6.  First, respondents were asked to list all brands of vaginal care products they have ever seen or heard of to provide an initial measurement of unaided awareness.  *Id*.  Next, respondents were shown a total of eight names, one at a time in a randomized order, and for each name were asked whether or not they had ever seen or heard of the name in connection with any vaginal care product.  *Id.*  Of the eight names shown to respondents: one was VAGISIL, to provide a measurement of aided awareness; six were actual brands – MONISTAT, SUMMER'S EVE, REPLENS, LUVENA, VAGI-GARD, and SWEET SPOT; and the remaining name was a fictitious term selected by Mr. Poret, VAGIZOX, to measure survey noise.  *Id.* at 10-11.  Mr. Poret claims to have selected the control, VAGIZOX "because it uses the 'VAGI' prefix in connection with a fictional brand."  *Id.* at 11.  As detailed *infra,* the selection of "VAGIZOX" as the control was improper and implausible because it is not sufficiently similar to VAGISIL or existing vaginal care marks, and because Mr. Poret should have used multiple controls instead of just one.

Because the suffix -ZOX was so incongruous with "vaginal care products" the survey results for VAGIZOX demonstrated only a 5.3% rate of awareness of that mark, and thus 5.3% was deducted from Mr. Poret's figures.  *Id.* at 13.  Overall, Mr. Poret claims that his Fame Survey found a 38.7% unaided awareness rate and a 90% aided awareness level.  *Id.*

### C. **Dr. Simonson's Opinions on Defects in the Poret Surveys**

#### i. **Dr. Simonson's Expertise**

Wolff's expert Dr. Itamar Simonson is one of the country's most highly regarded experts on the topics of consumer behavior, marketing management, consumer perception of brands and trademarks, survey methods, and human judgment and decision making.  Dr. Simonson is a Professor holding the Sebastian S. Kresge Chair of Marketing at the Graduate School of Business at Stanford University.  He reviewed and provided a Rebuttal Report to the Poret Confusion Survey and the Poret Fame Survey, attached hereto as Exhibit 3 ("Rebuttal Report").  Dr. Simonson focuses his research on buyers' purchasing behavior, the effect of product characteristics, such as brand name, price and features, the competitive context, and marketing activities, promotion and advertising on buying decisions, and trademark infringement from the consumer's perspective.  Dr. Simonson has served countless times as an expert in prior cases regarding marketing and buyer behavior issues, class actions, trademark-related matters, false advertising, and branding.  He has conducted, supervised, or evaluated over 1,000 different marketing research studies relating to consumer behavior and information processing, trademark, branding, marketing strategies, and advertising-related issues.

#### ii. **Flaws in Poret's Confusion Survey**

Dr. Simonson identified numerous fatal defects in the Poret Confusion Survey, including Mr. Poret's failure to approximate marketplace conditions and his poor choice of controls.  Ex 3.  For example, Mr. Poret should have approximated marketplace conditions by showing respondents actual VAGISAN product packaging from Amazon.com, or the United Kingdom.  *Id.* at 6, 13.  If Mr. Poret had done so, this likely would have had a major impact on the results of the survey.  *Id.*

The dissimilarity between VAGIPUR and other registered VAGI-prefix names makes VAGIPUR a poor control choice. *Id.* at 19-20. Further, Mr. Poret improperly counted many responses as indicating confusion, when in fact the responses were not based on any similarity between the marks VAGISAN and VAGISIL. *Id.* at 20. Instead of assessing the likelihood of confusion between VAGISIL and VAGISAN, the "survey turned into a word association exercise whereby some group test respondents were simply led to mention the name with the VAGI prefix they were most familiar with." *Id.* at 20.

### iii.  Flaws in Poret's Fame Survey

The Poret Fame Survey suffers from similar defects due to Mr. Poret's use of a single, poor control – VAGIZOX. As explained by Dr. Simonson, the selection of a proper control in a fame survey is critically important when the mark being tested has a generic component such as "VAGI," as is the case here. "VAGIZOX" is an improper control because it is dissimilar to any mark that is actually used for vaginal care products, none of which use the term "VAGI" followed by the letter "Z." *Id.* at 11. Mr. Poret should have used multiple controls, namely, existing brand names plus a plausible fictional VAGI- mark, to attain an average of all the controls. *Id.* at 11. As detailed below, these flaws render the Poret Fame Survey unreliable.

### D.  Additional Defects in Poret Confusion Survey

Mr. Poret also made major tabulation errors that favor Combe. For example, Mr. Poret's tabulation errors resulted in an inflated net confusion rate of 19%, when in fact the net confusion rate should have been approximately 12%. These significant errors render Mr. Poret's Confusion Survey unreliable.

## II.  LEGAL STANDARD

The Poret Confusion Survey and the Poret Fame Survey both must be excluded under Federal Rule of Evidence 702 because neither is based on sufficient facts or data, neither is the

product of reliable scientific principles and methods, and Mr. Poret failed to reliably apply accepted scientific principles to the facts of this case. Fed. R. Evid. 702(b)-(d). Under Rule 702, trial judges are charged with acting as gatekeepers to bar unsupported and unreliable evidence from trial. *Daubert v. Merrell Dow Pharms. Inc*, 509 U.S. 579, 597 (1993). Trial judges must ensure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id*. The proponent of expert testimony has the burden of establishing admissibility by a preponderance of proof. *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 456 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)).

An expert, qualified by knowledge, skill, experience, training or education, may offer an expert opinion only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Courts consider several factors when assessing the reliability of expert testimony: (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *Daubert*, 509 U.S. at 593–94.

A likelihood of confusion survey should be excluded if it was not conducted according to accepted principles in a statistically correct manner. *Valador, Inc.*, 242 F. Supp. 3d at 456–57

(citing *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005)); *see also*

*Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-1308 (RJS), 2016 WL 1276450, at *7 (S.D.N.Y.

Mar. 29, 2016) ("Courts consider a variety of factors when evaluating the admissibility of a

survey, including whether the survey was 'properly designed and objectively and fairly

conducted,' replicated marketplace conditions, and contained 'questions [that] are directed to the

real issues.').

### III.   ARGUMENT

#### A.   The Poret Confusion Survey Should be Excluded.

##### i.   Poret's Survey Methodology is Flawed Because it Fails to Replicate Market Conditions.

Mr. Poret's Confusion Survey must be excluded because it fails to replicate the actual

marketplace conditions in which consumers are most likely to encounter the VAGISAN mark.

To accurately test for confusion, Mr. Poret should have used the VAGISAN product packaging

currently sold on Amazon.com and in the United Kingdom.  This is the best available evidence

of how consumers may encounter VAGISAN in the marketplace.  Combe has been aware of this

packaging since at least November 2017, and noted it in its opposition to Wolff's motion to

dismiss.  ECF 19, at 3 ("Wolff's VAGISAN product is already available for sale in the U.S. on at

least Amazon.com …").

*In the context of a TTAB proceeding,* the TTAB has acknowledged that it is sometimes

acceptable to conduct a survey that shows respondents an applicant's mark in Times New Roman

or block letters, rather than in a stylized format or on packaging.  *Miles Labs., Inc. v. Naturally*

*Vitamin Supplements, Inc.*, 1 U.S.P.Q.2d 1445, 1455-62 (T.T.A.B. 1986).  By contrast, survey

evidence in federal court proceedings must replicate marketplace conditions, particularly in a

case where the TTAB heavily emphasized the marketplace conditions (including the presence of

multiple third-party VAGI- marks), in reaching its decision.  In light of the facts, Mr. Poret's

survey is inadmissible because it fails to capture marketplace conditions.

Courts have repeatedly rejected "index card" surveys like Mr. Poret's in which

respondents are merely shown marks in plain text rather than as actually used in the marketplace.

These courts emphasize the importance of "performing surveys close to the real world context,"

explaining "surveys based on word association tests divorced from marketplace context, are not

as probative to the issue of likelihood of confusion in the real-world marketplace since they fail

to simulate the real world setting in which instances of actual confusion would occur." *Hershey*

*Co. & v. Promotion In Motion, Inc*., Civ. No. 07-cv-1601 (SDG), 2013 WL 12157828, at *19

(D.N.J. Jan. 18, 2013) (survey stimuli of index cards were not given "much evidentiary weight");

*Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1146–47 (10th Cir. 2013) ("Marks should be

compared 'as a whole as they are encountered by consumers in the marketplace.'") (quoting

*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090 (10th Cir. 1999));

*CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 271 (4th Cir. 2006) ("To

determine whether two marks are similar, 'we must examine the allegedly infringing use in the

context in which it is seen by the ordinary consumer.'") (citing *Anheuser–Busch, Inc. v. L & L*

*Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992)); *Worsham Sprinkler Co. v. Wes Worsham Fire*

*Prot., LLC*, 419 F. Supp. 2d 861, 877 (E.D. Va. 2006) ("Nonetheless, it is also 'necessary to

assess similarity and differences in the marks, not in a vacuum, but in the actual use of the marks

in the commercial context. The issue then is whether the marks, as actually used are so similar in

appearance and sound as to result in confusion.'") (quoting *IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 825 (E.D. Va. 1998)).[2]

The Poret Confusion Survey "showed and asked about the mark as it appears in the application at issue, rather than as used on a marketplace product." Ex. 1, Poret Confusion Survey, at 6. To comply with the survey standards applicable in federal court cases – and to best fit the facts of this case – Mr. Poret should have used the VAGISAN product packaging currently sold on Amazon.com and in the United Kingdom, which is the best available evidence of how consumers may encounter VAGISAN in the marketplace. Ex. 4, Simonson Dep. at 79, 81; *see Componentone, L.L.C. v. Componentart, Inc.*, No. 02:05cv1122, 2008 WL 4790661 at *21, *24-25 (W.D. Pa. Oct. 27, 2008) (survey that "presented the parties' marks on a plain background in large block letters followed by descriptions of the companies" was "completely divergent from the conditions that potential purchasers encounter in the parties' marketplace" and thus could not "serve as a meaningful measure of ... confusion"); *see also Playtex Prods., Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 168 (2d Cir. 2004) (excluding dilution survey that "did not use any Georgia–Pacific packaging [or house marks], but rather used index cards"); *Visa Int'l Serv. Ass'n v. E. Fin. Fed. Credit Union*, 24 U.S.P.Q.2d 1365, 1368 (9th Cir. 1992) (survey flawed where "Visa did not use an actual MoneyPlus card in its survey"); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ.7203(DLC), 2006 WL 1012939, at *25 (S.D.N.Y. Apr. 19, 2006) (confusion survey held to have "no value" where the "survey did not replicate the marketplace conditions in which consumers encounter Lancome's products"); *Pilot Corp. of Am. v. Fisher–Price, Inc.*, 344 F. Supp. 2d 349, 358 (D. Conn. 2004) (rejecting confusion survey that showed logos "in isolation" rather than actual products; "That two logos may be confusing when viewed in

---

[2] *See also Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011) (*citing Phillips Petroleum Co. v. C.J. Webb, Inc.*, 442 F.2d 1376, 1378 (C.C.P.A. 1971)) ("As explained in *Phillips*, illustrations of the mark as actually used may assist the T.T.A.B. in visualizing other forms in which the mark might appear.").

isolation … does not show that their use on two separate products is also confusing"); *Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 484 (S.D.N.Y. 2002) (noting that using a mark on card rather than on a bottle as it would appear in marketplace caused "methodological errors that prevented [the survey] from replicating actual market conditions").

In a factually similar case, where there was no available product packaging in the United States, the District of New Jersey agreed with Dr. Simonson that a survey stimulus showing the mark only in block letters on an index card was improper and product prototypes would have been a better stimuli. *Hershey Co.*, 2013 WL 12157828, at *19 (survey stimuli of index cards were not given "much evidentiary weight").

Given the district court's authority to consider additional evidence in a 1071(b) appeal such as this, and the importance marketplace conditions played in the underlying TTAB proceeding, a more reliable survey would have used the Amazon.com or VAGISAN United Kingdom product packaging to replicate the conditions in which consumers will encounter the VAGISAN mark in the marketplace. *Kroger Co. v. Lidl US, LLC*, No. 3:17-480-JAG, 2017 WL 3262253, at *2–5 (E.D. Va. July 31, 2017) (plaintiff failed to make a clear showing of actual confusion due to defendant's competing survey and potential flaws in plaintiff's methodology, and the failure to show the marks as they appear in the marketplace); *Valador*, 242 F. Supp. 3d at 462 (survey unreliable where survey participants were shown "black-and-white images of the word . . . without any other styling, words, symbols or images that typically accompany the word" as used in the marketplace.")

## ii.  The Survey is Invalid Because it Used an Improper Control.

A valid likelihood-of-confusion survey must include a proper control to measure the background "noise" or "error" in the survey. *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218,

240 (S.D.N.Y. 2010) (survey that failed to replicate actual marketplace conditions and failed to use an adequate control was deemed inadmissible).  To fulfill its function, a control should "share [ ] as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."  *Id.* (citation omitted). Without a proper control, there is no benchmark for determining whether a likelihood of confusion estimate is significant or merely reflects flaws in the survey methodology.  *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 534 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (giving survey no weight where "[t]he most significant error … was its choice of control variables").

Mr. Poret is no stranger to the importance of controls.  Recently, the Western District of Tennessee declined to give weight to a confusion survey conducted by Mr. Poret due to "Poret's failure to use a proper control image in his survey, or at least to explain to the Court's satisfaction why the image he used … was a proper control image and how his quality control measures verified his conclusion, undermin[ing] any findings that might otherwise be based on his survey results" *Ducks Unlimited, Inc. v. Boondux, LLC*, No. 2:14-02885-SHM, 2017 WL 3579215, at *29 (W.D. Tenn. Aug. 18, 2017).

"VAGIPUR" is an improper control because it is not close enough to the tested mark VAGISAN, and thus did not adequately capture survey noise.  *Joules Ltd. v. Macy's Merch. Grp. Inc*, No. 15-CV-3645 KMW, 2016 WL 4094913, at *10 (S.D.N.Y. Aug. 2, 2016), *aff'd*, 695 F. App'x 633 (2d Cir. 2017) ("A control should be as close as possible to the stimulus being tested . . . except for the allegedly infringing feature."); *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1027 (N.D. Cal. Sept. 19, 2017) ("Johnson's survey used an improper control . . .that … was not as similar to the allegedly infringing product as possible with only the allegedly

infringing aspect removed"), *appeal filed*, No. 17-16916 (9th Cir. Sept. 22, 2017).  Instead of

"VAGIPUR," Mr. Poret should have used a control that includes not just the generic pre-fix

"VAGI," but also the letter "S."  *See* Ex. 4, Simonson Dep. at 132 (Mr. Poret "should have used

a name that start[ed] with V-A-G-I-S, assuming that it is not Combe's position they monopolize

the letter 'S' appearing after the letters V-A-G-I.").  And Mr. Poret concedes – as he must - that a

control beginning with "VAGIP" is further away from VAGISAN and VAGISIL than a mark

that begins with "VAGIS."  Ex. 5, Poret Dep. at 107.

Second, the use of "VAGIPUR" is improper because contrary to Mr. Poret's unfounded

assertion, the component "SAN" in VAGISAN does not mean "sanitary" and thus does not have

the same connotation as "PUR."[3]  Instead, the term "SAN" in VAGISAN refers to the Latin

word for "health."  Ex. 6, Thevessen Dep. at 73:14-74:20, attached hereto as Exhibit 4.

Third, Mr. Poret's use of "VAGIPUR" is improper because "PUR" is a commonly used

suffix for city and location names, and is the generic name of cities in a large part of the world.

Ex. 4, Simonson Dep. at 127-128, 132-133.  VAGIPUR, the one and only control used in the

Poret Confusion Survey, sounds foreign and unusual, and is a name that doesn't seem to fit

anything, making it an implausible control.  *Id.* at 127-128, 132-133, 158.  "Without a proper

control, there is no benchmark for determining whether a likelihood of confusion estimate is

significant or merely reflects flaws in the survey methodology." *THOIP*, 690 F. Supp. 2d at 240.

Accordingly, Mr. Poret's selection of a control that is not as close as possible to the stimulus

being tested (VAGISAN), except for the allegedly infringing feature, and that is based, in part,

on an inaccurate understanding of the meaning of VAGISAN, warrants exclusion of his survey

and report.  *See* Ex. 4, Simonson Dep. at 156; *see Innovation Ventures, LLC v. N2G Distrib.*,

---

[3] Mr. Poret "imagine[d] that san relates to sanitary, which might be something that someone wants to communicate, and pur is certainly something that could convey purity, which is a similar concept."  Ex. 5, Poret Dep. at 108-109.

*Inc.*, No. 08-CV-10983, 2011 WL 6010206, at *2 (E.D. Mich. Nov. 30, 2011) (granting motion to exclude survey, in part for use of improper control); *Citizens Banking Corp. v. Citizens Fin. Grp., Inc.*, 320 F. App'x 341, 348 (6th Cir. 2009) (upholding district court's decision to minimize weight given to confusion surveys after finding "several flaws in the surveys, including the improper use of a control").

### iii.  Poret's Confusion Survey Should be Excluded Because it Improperly Counted Individuals Who Were Not Confused by the VAGISAN Mark, and Failed to Account for the Genericness of the Term VAGI.

Mr. Poret's Confusion Survey includes significant tabulation errors which render the survey unreliable and warrant exclusion.  In particular, Mr. Poret's failure to account for the genericness of the term "VAGI" and his improper inclusion of individuals who identified VAGISIL for irrelevant reasons result in an improper net confusion rate of 19%, when the correct rate should have been approximately 12%.

Both VAGISIL and VAGISAN are comprised of the same prefix "VAGI," a generic term used to denote vaginal care products.  Ex. 4, Simonson Dep. at 125. ("The generic component of the name [is VAGI]. It identifies the function of the product."; "The prefix is a generic component, happens to be used on many products.").  However, the Poret Confusion Survey did not account for the genericness of the term VAGI, and improperly counted Test Group respondents who did not identify VAGISIL in their answers.  For example, Respondent #1330 was included as a response expressing confusion, even though her response makes no reference to VAGISIL, and in fact she referenced VAGISAN.[4]  Ex. 1, Appendix D.  This respondent's

---

[4] When Respondent #1330 was asked the question "[w]hat company or brand do you think puts out the products we just told you about, if you have an opinion," Respondent #1330 answered "VAGISAN."  *Id.*  Then Respondent #1330 was asked "[w]hat makes you think so", to which Respondent #1330 answered "[t]hat was what the product name said above the description of what it was for."  Id.  None of Respondent #1330's subsequent answers were VAGISIL, or even closely related, yet Mr. Poret marked Respondent #1330 as identifying VAGISIL in response to one or more confusion question.  Ex. 5, Poret Dep. at 159.

answer identifying "VAGISAN" as being made by VAGISAN because "that's what the product name said" underscores the genericness of the term VAGI. Mr. Poret admits that if all the respondent said is "VAGISAN," the response should not have been counted toward confusion. Ex. 5, Poret Dep. at 175.

Mr. Poret counted several other responses as reflecting confusion, when in fact they should have been excluded. For example, Respondent #1764 is identified as reflecting confusion despite answering the question "[w]hat company or brand do you think puts out the products we just told you about, if you have an opinion" by saying "VAGAPUR by VAGISIL." Ex. 1, Appendix D. As admitted by Mr. Poret, this response should have been included in the Control Group rather than the Test Group because "it is safe to assume" any respondent who "said VAGIPUR, they were in the control group." Ex. 5, Poret Dep. at 155.[5]

Further, Mr. Poret improperly included in the confusion figure respondents whose identification of VAGISIL was not based on any particular similarity to the VAGISIL name, but instead cited irrelevant factors such as the "VAGI" prefix or familiarity with VAGISIL. The court in *Ducks Unlimited, Inc. v. Boondux, LLC* gave Mr. Poret's survey no weight due to similar flaws. In that case, Mr. Poret designed an online *Eveready* survey to test whether consumers who encountered the Boondux Logo would be reminded of the Ducks Unlimited Logo. *Id.* at *10. To do so, Mr. Poret used the Boondux Logo as the Test Image, and a competitor of Ducks Unlimited, Drake, as the Control Image. *Id.* at *11. The court declined to give any weight to Poret's survey because "Poret's findings failed to rule out the possibility that someone unfamiliar with the Boondux brand might mistakenly identify Ducks Unlimited with the Boondux Logo simply because Boondux Logo looks like a duck head rather than because it is confusingly

---

[5] Accordingly, Respondent #1764's answer mentioning VAGAPUR, means it is safe to assume Respondent #1764 was shown the VAGIPUR mark and part of the Control Group, not the Test Group.

similar to the DU Logo."  Similarly, in this case, Mr. Poret improperly counted toward the confusion figure responses of people who identified "VAGISIL" simply because of the "VAGI" prefix, rather than because the VAGISAN mark is confusingly similar to VAGISIL.  As explained by Dr. Simonson, "[t]he prevalence of such answers provides further evidence that the survey methodology effectively capitalized on the common prefix and the recognition of VAGISIL."  Ex. 3, Simonson Rebuttal Report at 22.

Mr. Poret incorrectly claims his control mark VAGIPUR measures precisely how many people are naming VAGISIL for reasons that do not show trademark similarity.  However, of the **twenty-two** test group respondents who identified VAGISIL in response to question number 220 (the first confusion question): "[w]hat company or brand do you think puts out the products we just told you about, if you have an opinion," **all** explained their selection of VAGISIL for factors that were not based on any similarity to the VAGISIL name:

| Respondent | Answer to Question 225: "What makes you think so" |
|---|---|
| **159** | That's the most common name brand |
| **255** | both start with VAGI |
| **477** | Seems to offer similar products with the same benefits |
| **570** | they are a big company for feminine products |
| **625** | They put out a lot of vaginal products |
| **635** | It has a similar product line |
| **748** | They are a popular vaginal product maker |
| **853** | they are the leading vagina medicine company |
| **871** | just sounds right |
| **1022** | The first letters are the same |

17

| 1040 | They sell OTC feminine products |
|---|---|
| 1568 | Leading brand |
| 1735 | I don't know of any other vaginal moisture producer affiliate |
| 1777 | leader in the industry |
| 1837 | The similar in the first four letters of the names |
| 1900 | VAGISIL is well known, and deals with vaginal  cleaners, etc |
| 2071 | VAGISIL is the company I use for various vaginal products |
| 2212 | i've used the products before |
| 2532 | I've purchased VAGISIL before, but I think saw similar Summer's Eve products in store before |
| 3307 | It's really the only name I'm familiar with for this type of product |
| 3410 | maybe because they start with the same three letters and that is a known market name |
| 3770 | The VAGI in VAGISAN |

Similarly, Mr. Poret improperly counted **eleven** Control Group Respondents who identified VAGISIL in response to question number 220, and whose explanations were based on irrelevant factors:

| Respondent | Answer to Question 225: "What makes you think so" |
|---|---|
| 235 | they make those products |
| 654 | They are a leader in vaginal products. |
| 1110 | Because the name of the products starts with VAGI. |
| 1341 | they make lubrication products for men and women |

| 1412 | It is another company with the same products |
|------|----------------------------------------------|
| 1520 | its the only brand I know of in this category |
| 2959 | The beginning of the name and Vagisil releases these types of products |
| 3021 | Because that is a popular company that puts out those products |
| 3053 | Its the only brand I know of that sells things in this category |
| 3233 | only brand I know |
| 3260 | only brand I know that puts out those products |

During his deposition, just like in *Ducks Unlimited*, Mr. Poret was unable to adequately explain how his survey accounted for the answers above. Mr. Poret explained "it'll even out in the end" because, "[b]oth groups were treated the same," Ex. 5, Poret Dep. at 169, while overlooking that *double* the number of respondents in the control group identified VAGISIL for irrelevant reasons. As explained by Dr. Simonson, "[a]lthough a few irrelevant reasons might be dismissed as noise, a finding that a large percentage of provided reasons are based on factors that have nothing to do with the alleged confusion . . . indicates that the survey failed to measure the alleged confusion at issue." Ex. 3, Simonson Rebuttal Report at 20. By including respondents who identified VAGISIL for reasons other than confusion – or in Mr. Poret's words, by simply treating the groups the same – he drove up the number of respondents in the Test Group who were counted as identifying VAGISIL (double the number of respondents in the Control Group), and improperly inflated the confusion rate.

The Poret Confusion Survey, when tabulated accurately and correctly, and not to favor Combe, results in a much lower net confusion rate of 12%. Specifically, the correct number of confused Test Group respondents is 50, 25% of respondents, excluding Respondent #1330 (not confused), Respondent #1764 (not in the Test Group), and the twenty-two respondents who did

not identify VAGISIL for a relevant reason.  The correct number of confused Control Group

respondents is 26 or 13% of respondents, including Respondent #1764 (confused and in Control

Group), and excluding the eleven respondents who did not identify VAGISIL for a relevant

reason   Thus, the correct net confusion rate should have been 12%, well below Mr. Poret's

calculated 19% confusion rate, and below the level of confusion that courts find probative of

likelihood of confusion.  *See, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10 CV 2333

(KMW), 2013 WL 822173, at *22 (S.D.N.Y. Mar. 6, 2013) ("Figures below 20% become

problematic because they can only be viewed against the background of other evidence weighing

for and against a conclusion of likely confusion.") (quoting 6 J. Thomas McCarthy, *McCarthy on*

*Trademarks and Unfair Competition* § 32:188 (4th ed.  2012)).  Mr. Poret's incorrect tabulations

render his Confusion Survey unreliable, and warrant exclusion.

### iv.   If the Poret Confusion Survey is Not Excluded, it Should Be Given No Weight.

"[W]hen the deficiencies are so substantial as to render the survey's conclusions

untrustworthy, a court should exclude the survey."  *Water Pik, Inc. v. Med-Sys., Inc.*, No. 10-

01221-PAB-CBS, 2012 WL 2153162, at *11 (D. Colo. June 13, 2012) (excluding expert's

survey due to multiple errors, including unrepresentative market conditions that rendered

expert's "conclusions devoid of any probative value and therefore irrelevant."), *aff'd*, 726 F.3d

1136 (10th Cir. 2013); *see also Ashland Oil, Inc. v. Olymco, Inc.*, 1995 WL 499466, at *4 (6th

Cir., Aug.21, 1995) ("It is the trial court's responsibility to determine the probative value of a

consumer survey, and it is appropriate for the trial court to accord little or no weight to a

defective survey.").

Here, Mr. Poret not only used an improper control, and failed to take into consideration

marketplace conditions, Mr. Poret also made multiple tabulation errors – all in favor of Combe.

This raises doubts as to the trustworthiness of his entire survey. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2011 WL 6010206, at *2 (E.D. Mich. Nov. 30, 2011) (granting motion to exclude survey, in part for use of improper control and failure to provide study participants with actual bottled products); *THOIP v. Walt Disney Co*., 690 F. Supp. 2d 218, 240-41 (S.D.N.Y. 2010) (excluding survey that failed to replicate actual marketplace conditions and used improper control). All of these flaws justify complete exclusion of the Poret Confusion Survey. However, if the Court declines to exclude the Confusion Survey, it should be accorded no weight.

**B.  The Poret Fame Survey Should Be Excluded**

**i.  The Survey is Invalid Because it is Based on a Flawed Methodology.**

The Poret Fame Survey is unreliable because it hinges on an improper control – VAGIZOX – which renders the survey unreliable. Mr. Poret arrived at VAGIZOX as a control because he "wanted to have something that had the VAGI prefix and three letters that I was pretty sure were not another existing mark" and "was fictional." Ex. 5, Poret Dep. at 201. Even though Poret might have chosen a control to meet his stated goals, his control is invalid because it is dissimilar to current products on the market and other third-party VAGI registrations, and resulted in an abnormally low recognition rate. As Dr. Simonson stated, the selection of VAGIZOX "may be good for the plaintiff in this case, but that's about it." Ex. 4, Simonson Dep. at 187.

The suffix "ZOX" is highly unusual, and VAGIZOX is an implausible name. *Id*. at 182. After spending time searching for brand names with "ZOX" at the end of the name, Dr. Simonson was only able to identify a product from India that may be sold in the United States, Azoz, and an e-commerce company called Azox. *Id.* at 181-82. The suffix "ZOX" is very

different than any third party "VAGI" registration and is also dissimilar to "VAGI" products currently on the market for sale.  For example, third-party registrations for feminine hygiene products, as noted in the TTAB's decision, include VAGI-WAVE, VAGITONE, VAGITOCIN, VAGISTAT-3, VAGISTAT, VAGI-KOOL, VAGI-HEX, VAGI-GARD, VAGIFRESH, VAGIFIRM, VAGIFEM, VAGI-CURE, VAGI-CARE, and VAGICAL.  *Combe Inc.*, Opposition No. 91209708, slip op. at 18-19.  None of these registrations use the rare letter "Z" or the incongruous letters "OX" after the common generic prefix VAGI.  The TTAB also recognized the following VAGI products were available for sale: VAGI-CARE, VAGICARE, VAGIFIRM, VAGI-CLEAR, VAGIFRESH, VAGI-SILK, VAGI-CURE, VAGICREAM, and VAGISTAT-3. *Id.* at 19-20.  None of the VAGI prefix vaginal hygiene products on the market today start with the letter "Z" after the generic prefix.  Even Mr. Poret was unable to name any health, beauty, or feminine care products that use "ox" or "zox" as a suffix, explaining he was "trying to use a name that is not used in that category so that it is a fictional name." Ex. 5, Poret Dep. at 212.

To provide a reliable estimate of survey noise, Mr. Poret should have used multiple controls, namely, existing brand names and at least one fictional VAGI-prefix name, to attain an average of the controls.  *See* Ex. 4, Simonson Dep. at 183 (the term VAGIZOX resulted in five percent recognition, "which by itself should have been a little alarming" to Mr. Poret).

Dr. Simonson explained "there needed to be three plausible controls" to account for the idiosyncratic characteristics of each control name, and suggested that the average of three controls would have produced a reliable estimate of noise.  *Id.* at 189-91.  The use of multiple controls also avoids the confounding of results with any given name, and would have left the survey not entirely dependent on a control that resulted in a low recognition level, VAGIZOX. *Id.* at 183-84, 189-90.

The foregoing flaws render the Poret Fame Survey unreliable.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Wolff respectfully requests that the Court enter an order excluding and/or striking the reports, opinions, and testimony of Defendants' proffered expert Hal Poret.

Respectfully submitted,

  /Michael A. Grow/_____
 Michael A. Grow (#15021)
 Ross Q. Panko (*pro hac vice*)
 Laura E. Zell (*pro hac vice*)
 ARENT FOX LLP
 michael.grow@arentfox.com
 ross.panko@arentfox.com
 laura.zell@arentfox.com
 1717 K Street N.W.
 Washington, D.C. 20006
 (P) (202) 857-6000
 (F) (202) 857-6395

 *Attorneys for Defendant Dr. August Wolff*
 *GmbH & Co. KG Arzneimittel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August, 2018, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will them send a notification

of such filing (NEF) to the following:

> Anna B. Naydonov (VSB #80101)
> Douglas A. Rettew
> FINNEGAN, HENDERSON, FARABOW,
> GARRETT & DUNNER, LLP
> 901 New York Avenue, NW
> Washington, D.C. 20001-4413
> Telephone: (202) 408-4000
> Facsimile: (202) 408-4400
> Anna.Naydonov@finnegan.com
> Doug.Rettew@finnegan.com
>
> *Counsel for Plaintiff Combe Inc.*

>               /Michael A. Grow/
> Michael A. Grow (VA Bar No. 15021)
> ARENT FOX LLP
> 1717 K Street NW
> Washington D.C., 20006-5344
> (P) (202) 857-6000
> (F) (202) 857-6395
> Michael.grow@arentfox.com
>
> *Attorneys for Defendant Dr. August Wolff*
> *GmbH & Co. KG Arzneimittel*

24